The next case on the docket is Corphotonics v. Apple, Appeal No. 22-1340. Mr. Liddell, whenever you're ready. Thank you. Good morning, and may it please the Court, I'm Brian Liddell for Corphotonics. I'll start by saying that this appeal and the next certainly share a great deal of commonality on some of the core issues, so I'll do my best not to be too repetitive on those. But the core issue here from our perspective is that the Board never made a proper finding that was properly supported that the art relied on, the primary references, were within the proper scope of the prior art, as would be required as a showing underground. Essentially, there is no dispute that in its petition, Apple failed to show that the references on which it relied were properly analogous art within the scope of the prior art. I think that is disputed. It's not their lead argument, but I think they say that their one sentence can easily be read by a reasonable person as making a comparison to the challenge patents. They do argue that. The Board certainly found otherwise. Well, by the way, if they do argue that, why are you saying it's undisputed? I think it's undisputed that the petition compared the two references to one another, not to the art. I think if that were so meaningfully disputed, we wouldn't have Apple completely re-articulating a completely different position in its reply. I think they recognized and the Board said this was wrong, that you submitted the wrong analysis, and this court said in the recent Sanofi decision that that's the wrong analysis, that comparing the references to one another cannot be a showing of analogous art. It cannot meet the standard. It cannot meet the petitioner's burden, and that it cannot be supported if that's what the Board relies on. Now, the Board said that's not, it wasn't in the petition, and from our perspective, that should end the inquiry. I mean, the Board made an express finding that the petition. But what about Sanofi, which you've already put on the table? Sure. Doesn't that give them a chance to do it in the reply room? So I think two thoughts on Sanofi. First, the sentence that is quoted by Apple from Sanofi regarding using the reply is, one, dicta in Sanofi, because there was no suggestion in that case that the petitioner actually did offer a different position in reply. They simply doubled down on the position that they offered in their petition. So there's no holding to that effect in Sanofi. I also don't think that it would be a proper holding. Sanofi doesn't really analyze this consistent with Graham and consistent with Section 312 or Section 42.104 of the CFR regulations governing petitions. So it's your position that petitions must present an argument on analogous art in every single petition? Yes, because that is the first step of the Graham analysis for obviousness. So the statute requires that a petitioner has to include all of the grounds and the argument for why it meets, in this case, Section 103 for obviousness. So the first gram factor is scope and content of the prior art. That's correct. You're saying you have to go so far as to explain that it's prior art. Well, the scope and content of the prior art, how we determine what that is, is the analogousness test. That's what Clay says. That's what Sanofi Aventis actually says, that the analogousness test is a determination of whether a reference that you're relying on is within the scope of the prior art or not. Well, the same could be said for what the effective filing date is or what the effective date of a reference might be. Are all these things part and parcel of the obligation to make a prima facie case? Or can't a party simply say, I believe the claim is obvious, A, in view of B? So I think you have to meet the Graham factors, one of which is showing that the reference is within the prior art. And you have to make that prima facie showing in your petition. Now, can't you do that by just simply citing the references? Well, no, because there is a factual determination that, as Graham, Clay, Biggio all make clear, you have to show that it's an analogous reference. You can't just make a conclusory assertion that it's in the prior art. A prima facie case that something's in analogous reference just by describing what you're relying on it for. In some cases, that is enough. I mean, in many cases, historically, parties haven't been including this in petitions. Nor have patent examiners been including it in their office actions. So there's been some sort of understanding that by describing the prior art itself, you're satisfying Graham factor one. Well, I think that's certainly not what the court found in Sanofi Aventus. This court said you have to show that it's analogous art. I understand. We're just talking about whether step one, do you have to have it in your petition? Sure. Or is it okay to have it in your reply? So. After it's been raised in the patent owner's response, right? That's what we're talking about right now. But I think the analogy, of course, that once a patent owner raises it, then there has to be something for him to show. Sure. So I think the analogy would be when a party asserts motivation to combine and says a person of skill in the art would be motivated to combine these references. If they do so in just a shorthand fashion and say, oh, and these other references, you'd combine them for the same reason. This court has said that's not sufficient. And you can't come back and fix that after the petition because you didn't put it in your petition. And correcting that kind of a failure isn't fair game for the reply. I think that's the loss of the case. I think intelligent bio systems certainly are to that point where the court has suggested that there is a possibility of supplementing or adding to a position. Frankly, pretty narrow circumstances. The board cited dynamic drinkware. But dynamic drinkware is a unique case where the patent owner swore behind the reference. So the petitioner made the prima facie showing that the reference was within the prior art in their petition in dynamic drinkware. But the patent owner essentially changed the date that was needed in the response. And the court found that that's a circumstance which is unique in which there is a burden of production on the patent owner on which there is not about the scope and content of the prior art, for example. But if you're changing the date, the priority date of the challenge claims, that's something the patent owner has a burden of production on in the first instance. And so then it is fair to respond and reply. And that's what dynamic drinkware was about. That's not this case. There's no changing position. There's no burden of production on the patent owner to show that something's not within the prior art. It's the affirmative burden of the petitioner to show that the reference is within the prior art. That's one of the it's the first ram factor. And if you fail to meet that in your petition, you haven't satisfied the requirements of the petition. That should be the end of the inquiry. Now, we submit that even if that's not correct, that even if this is something that you could remedy in a reply, Apple didn't remedy it in their reply here. That the the so on reply, Apple reformulated its suggestion as to why the art was analogous. And the board expressly did not accept Apple's formulations. It recited them in the final written decisions. But it then adopted a different formulation itself of what it thought the references were. This is the argument that the board is referring to field of view as a point of view instead of field of view. Right. Well, that's part of it. So first, if you look and I'll use the first of the two final decisions, although in this instance, they're identical on this point. At pages 32 to 33 of the appendix, the board talks first about what Apple asserted the references were directed to. Sorry, I'll give you a second to get there. And and lists what Apple suggested were the the either the field of endeavor first or the problem to which the the patent and the references were supposedly directed. It recites Apple's formulations of those, but it doesn't adopt either one of them. It then goes on. This is sort of starting at the last paragraph of the text on page 32 of the appendix. They they recite what they think Golan is, what its field of endeavor is as relates to the patent. That's not Apple's formulation. And then on page 33, they recite. You probably want to be a little more specific. We're very familiar with your arguments on both sides. So like maybe specifically tell us this is the language that shows to me why it is that they were reciting something different. The way I'm reading these two, their recitation of what was argued and how they find. I'm reading them as just using different words to pretty much mean the same thing. So I want to show me why I'm wrong. So they say that the petitioner asserts that Golan and Martin are each pertinent to the problem of the 233 patent, namely a quote, jump. This is middle part of page 32, namely a quote, jump discontinuous image change. When a dual camera, dual aperture camera switches the camera output between sub cameras or points of view. And then I'm going to focus on Martin here because I think this is the more egregious of the changes when we go to 33. The the board says we're persuaded that Martin is reasonably pertinent. This is at the top of 33 to the problem faced by the inventor, reducing an image jump effect seen in video output images when switching between cameras that have different fields of view. Now, Apple argues that this language should be rewritten and that the board's actual language should be ignored and that they should be deemed to have meant points of view when they wrote field of view. There's nothing to suggest that that's an accurate characterization. Indeed, the claims are actually directed to switching between cameras with different fields of view. The claims are directed to having a tele camera and a wider camera and switching between them. Well, those are two cameras with different fields of view. And there was extensive evidence in the record that Martin doesn't actually do that. And in its briefing, Apple concedes that Martin doesn't do that. That was the distinction between point of view and field of view at all material to the analogous art dispute. Absolutely, because the the camera, the patent and the analogous art issue, the challenge claims have to do with switching in a zoom context where you're changing the focal length. That's field of view. And that's field of view. You're switching from a narrower field of view camera to a wider field of view camera or vice versa. And how do you do so in a smooth fashion and change from those fields of view? Martin, admittedly, I think I don't want to overstate this, but I don't think that point of view because it's it's just OK. But but in both instances, the pertinent problem, it seems to me, is to smooth things out so that the viewer doesn't see a jump. I don't I don't think that that's correct. But I and the board, I don't think the board found that. But the the board is. So I think that we start by taking the board at its word that I'm going to interrupt you right there. I see the board saying reducing an image jump effect seen in video output images. And then when they characterize Apple's argument, they refer to a jump, discontinuous image change. I don't think I think they are. You're right that jump. They're talking about discontinuous changes and they're saying each is talking in some way, perhaps about discontinuous changes, but very different kinds of discontinuous changes. Because one is caused by the field of view and one is caused by the point, the point of view. That's right. But also, I mean, don't we all agree that Martin is directed to what is the languages parallax effects that are caused by points of view? Martin is directed. I would say Martin is directed to creating parallax effects or facilitating their display as opposed to minimizing them. Do you agree that parallax effects are caused by different points of view? Parallax effects are caused by different points of view. Are they caused by different fields of view? No, not necessarily. That's not a parallax problem. That's a if I have a wide point of view, I might see all three of your honors through that view. A narrow point of view, I might only see Judge Stoll and those differentiations and trying to avoid discontinuities when you're transitioning between them is the focus of the challenge. And I know I'm in my one more. So what about how this paragraph on 33 ends? Martin, the board says, describes the problem in terms of its solution, and then it talks about achieving stability, granted stability in connection with shifting points of view. But why can't that be pertinent to the problem of achieving stability or lack of jump when you're shifting between fields of view, just as the board said? Well, but the board didn't say they were the same, and it didn't say it sort of. It said Martin's directed to this, and it does suggest in the preceding sentence or a couple sentences above that Golan and Martin. And this is clearly factual error that I think even Apple concedes is an error, have multiple cameras with differing fields of view. That's the board statement. Martin does not. And Martin undisputedly does not have that. And so, one, there's no substantial evidence for that finding. But two, there's no that's not the problem. In other words, the board can't articulate the problem one way and say, well, this reference, which doesn't meet that problem, is somehow still analogous. It articulated the problem as different fields of view, and there's no dispute that the reference doesn't actually address that problem. Martin really isn't, from our perspective, Martin is wide a field of the problems to which the patent is directed. I have a couple questions for you. If Martin doesn't have two cameras, why do I see them, two cameras in figure one of Martin? So Martin, it doesn't have two different field of view cameras. It can either have one camera or two cameras. So Martin describes basically taking multiple images of the same scene from a different location and creating the effect different position. So can I ask you something? On page 25, A25, the board says Roman and Martin both involve parallax effects caused by two cameras in different fields of view. That's a typo, right? It should be points of view. Or it's a technical error. You're using the wrong vocabulary. It's wrong. But if I were to read this correctly, and I see parallax effects, those are not caused by different fields of view, they're caused by different points of view, right? I'm sorry, you're looking at page 25? Page 25 at the bottom. Golan and Martin both involve parallax effects caused by two cameras with different fields of view. That should be points of view, right? That's, I would say, so Golan is directed, albeit it doesn't use the techniques that are required for the claim, but Golan does actually have different fields of view. When we refer to parallax effects, that's caused by points of view, right? That's what you agreed to earlier. Yes, parallax effects can be caused by different points of view. Okay, and they're not caused by fields of view. I would say, generally speaking, you wouldn't necessarily characterize it as a parallax effect. The different aspects that you would see from a, I don't think that would be a common characterization. Okay. Can I ask one more? I know we're well over, but Apple argues in the reply that Martin is analogous under both tests. Yes. The field of endeavor and the pertinent problem. We've been talking about the pertinent problem, right? Correct. On field of endeavor, the board never makes any finding about whether Martin is within the same field of endeavor. If I were persuaded by you that there's a problem on the pertinent problem analysis, shouldn't I be for remanding for the board to consider whether it's in the same field of endeavor as Apple argued alternatively? I would say no, because I think that the framing that the board uses constitutes a rejection of Apple's argument. That's at best implicit. Well, but they note that Apple argued same field of endeavor for both references. They accept that that's correct for Martin, but not for, excuse me, for Golan, but not for Martin. So I think it's more than just a sort of loose inference. I think if I'm the board, when I write a decision and say they argued these two things, I accept this one, I think that's a rejection of the other. They didn't say both are correct, which I think might suggest something different. We believe, and I think substantial evidence supports, rejecting the first and only accepting a different formulation of the second that Apple didn't argue and that was incorrect. Thank you. Ms. McComas? Good morning. Good morning. You can proceed whenever you're ready. May it please the Court, Debbie McComas on behalf of Apple. I'm going to jump straight to Sanofi, and Sanofi says a petitioner is not required to anticipate and raise analogous arguments in its petition. I would suggest that we're bound by that. If it's, excuse me for a minute, that we're not, why is that a good rule? Because for the reasons Your Honor already articulated in asking the questions to my friend from Core Photonics, that the standard here that we have between 312 is to state with particularity the grounds. You do not have to delineate every single theory, anticipate every single possible theory that could come up that you might have to come up with and respond to in response. What we're required to do under KSR, it's a flexible standard for motivation to combine. As Your Honor pointed out, there could be instances, and I think this is one of them, where it's so evident how a certain piece of art fits within the framework and the field that that should not be an issue we're having to waste a ton of time and paper on in the petition. There are other instances in Sanofi, for example, where they were trying to compare a medical device to a car part. They should have better explained how that related to the invention. Here, we're in a very different position. So your answer would be, otherwise we have to think about how far afield these things are, to think that somebody should have anticipated it by putting it in their petition, how far afield the priority is from the claimed invention, so that there's like an extra inquiry. Well, you should have known that you needed to include this in your petition because it's so far afield. Are you suggesting we would include something like that, or that that would be hard to manage? I think that would be entirely hard to manage. I think the suggestion is that if you identify the prior art references, and you identify why there's a motivation to combine, implicit in that is going to be the analysis that KSR tells us we have to apply as to why those prior art references are relevant. And I think then, if the patent owner has a specific challenge to why looking at that motivation to combine, that the art doesn't fit within the parameters of prior art that we should be analyzing, they can raise that, and there's room in the reply to explain that further. I do believe that, as you said, it's a bit of a sliding scale in a certain case as to how evident and how clear that would be. But with respect to whether you're trying to write a bright-line rule on that, I think that the bright-line rule that's written in Sanfi is correct, which is that a petitioner is not required to state explicitly a separate section and analyze it. We don't make bright-line rules, but okay. Would you place any limits, though, on what can be done in the reply? So let's say the petition says they are analogous because they're in the same field of endeavor, and then the patent owner responds with lots of good reasons why they're not. Can the reply then go off on the pertinent problem, even though it wasn't flagged in the petition? I would say yes, and the reason being is, as you have in this case, you have clear articulation in the petition necessarily in anticipating the motivation to combine. You have an explanation of why it's pertinent. It's going to be clear, and the reason why Sanfi is such a good example on the far field that is not this case is because it wasn't clear, right? And even when they had the opportunity to explain, and even in that case, the court said you could have done it in reply, but you stubbornly refused to do the analysis and tell me how it applies to the patented invention. So I would suggest that it is pretty broad in the context of analogous art on what you're allowed to raise in reply. But we do have guidelines already from this court specifically as to what belongs in a reply brief and how far you can go with that. And the case law, I think, is relatively established between Genzyme and Proviso by example as to what you can say in reply, that it can include new evidence as long as it's responsive to the response. What you can't do are create new grounds. In other words, you cannot come up with a new combination. You can't add a new reference and talk about a new reference in reply. We already have those cases well established by this court. Why isn't my example analogous to new grounds? The grounds for analogousness in the petition was the same field of endeavor. The grounds for analogousness in the reply is now switched to pertinent problem. Why should you be allowed to do that? Well, I respectfully disagree that that's a ground. The ground is the motivation to combine, the basis for the motivation to combine. The question is, is it so analogous to grounds that a petitioner should be limited from moving that step away in their reply brief? No, because I think those are all still within the grounds of the motivation to combine between Golan and Martin in this example, or between your prior art references. If you raised a new prior art reference and said, oh, it would be pertinent, or this would make it pertinent, that would be beyond. From my reading of Genzyme, Proviso, and those cases, I think that would be. Let's go back to our case, because I think our case is in the comfort zone, where we're not having to make those bright-line determinations. And I want to address specifically the findings and whether they were adequate by the court, unless the court has more questions along the lines of that. Am I right that you are arguing that your one sentence in the petition was adequate here on analogousness? I would suggest that it's not just one sentence. There's a paragraph that specifically says that these two, Golan and Martin, both are within the same field of endeavor and defines the field of endeavor. I would suggest there's quite a bit more in this petition. And that that was adequate in your view? Correct, correct. Even though the court found that there was an improper comparison between Golan and Martin that didn't tie back to the invention itself, I would suggest to you that there's a clear statement from the very beginning that identifies what the petition's stated purpose is and what the problem to be solved is, and that that's throughout the entire petition. Does that answer Your Honor's question? It does, and this may be where you were headed, but I'm very curious about this typographical error argument. In fact, you are very bold, I think, at page 45 in saying, no reasonable person can read the decisions without understanding that the reference to fields of view is a typographical error. I don't know that you have to meet that high of a burden, and perhaps I'm unreasonable, but it's not at all clear to me it's a typographical error. Could you help me try to see why it is in your view? Sure, and I think my friend almost got there in conceding with Judge Stoll that it would be a typographical error, that when we're talking about the parallax effect that it would be caused by different points of view. That was in an earlier page, though. Correct, correct. I would suggest to you, and I think you alluded to it in your questioning as well, Judge Stark, specifically, if you look at the explanation that the Board gives at Appendix 33 as to why Martin addresses the problem, it's the sentence that says critical alignment corresponds to a condition where the degree of alignment is sufficient to achieve a stable 3D autostereoscopic display, and stability of the whole image may not be required provided that a particular region of interest ROI display is stable. That is the explanation by the Board as to why Martin is relevant to the problem to be solved, and it starts by saying Martin describes the problem through its proposed solution, and if you look at that sentence and that sentence alone, that's what's relevant here in the Board's finding as to what is the problem to be solved and how Martin reads on that. And that is supported by the substantial evidence, and we shouldn't have to go further than that. So I'm kind of working around your question a little bit in that I don't think you have to make the final determination on whether that's a typographical error to find that substantial evidence supports the Board's finding that Martin fits within the problem to be solved here. And because of that sentence and that's the explanation, I would suggest to you that the reference to field of view is an accident, it's a typographical error, a misunderstanding. I would also take issue with my opponent's suggestion that the field of view and point of view is what's really in dispute when we're talking about either the field of endeavor or the problem to be solved here. It may have been relevant ultimately to whether someone would have been motivated to combine, but as far as whether or not it addresses the problem, I would suggest to you that the Board found and that Martin supports solving this same problem of discontinuous jump. What about the concern that has been raised about Martin, where it says Martin describes the problem in terms of its solution? What's your response to that? I mean, the concern raised is that they should be showing that Martin identifies the problem. We're talking about reasonably pertinent to the problem, not just that Martin comes up with the solution, so why is that not hindsight? I think the question is, would a person of skill in the art be looking to this prior art reference as something to consider in making a combination? That's our ultimate question, the penultimate question. Is it prior art? Is it something I would go to to look for the solution? If my problem is trying to decide how to address the jump effect and the discontinuity, would I as a poseta look to this prior art reference? Maybe I'm not saying it clearly enough. What I'm saying the Board found by explaining that that's what Martin does, that Martin necessarily addresses that same problem, and here's its explanation for that, that the Board is finding consistent with the evidence that a poseta would have looked to that reference. Did I answer that the way you needed me to? I think that's a perfectly adequate answer. I think you're explaining that there's substantial evidence, right? Right, exactly. You do concede that Martin has nothing to say about field of view, correct? I would concede that the words in Martin are all addressing point of view, that that's what Martin really talks about. Really not just the words. There's nothing about field of view. It's not at all concerned with field of view. It's not the issue in Martin. That's correct. I mean, it shows multiple cameras. Conceivably, there could be fields of view, but it's just not the issue, right? I mean, it's not what we're talking about. So the Board is mistaken in at least a couple places when it talks about Martin having something to do with field of view, right? It's a typographical error, and the Board cites even just before that our reference and quote of Martin with point of view. How do I decide if it's a typographical error that I can maybe just look the other way from versus a substantial error that perhaps reveals the Board didn't understand Martin? Because it's not the point of view versus field of view question. Like you said, it's not what Martin is addressing. The Board quotes Apple's explanation and evidence explaining how Martin operates and that it relates to point of view consistently. So, for instance, at Appendix 12, it describes Martin early on as manipulating parallax images, two or more images with overlapping visual fields, but different points of view. So the Board understood how Martin worked, and then it cites to Apple's expert testimony defining Martin in terms of the points of view. It does that at Appendix 21 to 22, and there it's citing Appendix 54-14, which is Joanne's testimony. Do I have to say that these errors at 32 and 33 are typographical in order to affirm what the Board did here? I don't think so. I think there's substantial evidence without getting to whether it's field of view or point of view. Even granting that it's a non-typographical substantive error, how do I say there's substantial evidence? Because what the Board relies on as far as Martin defining the problem, which isn't related to field of view or point of view. Can I ask you this? Are you saying that it doesn't matter whether the problem is caused by point of view or field of view? The idea is that they're solving the problem of the image jump. Correct. I think you articulated it better than I did. Well, in that regard, none of this is how Apple articulated it below, right? The Board went off on its own. If you're right about what they're saying here. No, I don't think so. Everyone has always identified the problem to be solved as a jump. Sorry, you didn't say Martin is about field of view. No, we said Martin is pertinent to the problem because it solves the jump or discontinuity. That's been the point. Martin does it in addressing point of view. But the point, I think, is that the problem to be solved here is the jump or the discontinuity when there's been a shift. Isn't it correct that the pertinent problem the Board found that Martin was trying to solve is different than the pertinent problem you asked them to find that Martin was trying to solve? I would suggest to you, and maybe let me try it one more time, that I think the confusion and why we believe you have to see this as a typographical error is because it's incompatible to, in one sentence, say that the problem to be solved is solving the jump in the context of field of view and then explain exactly how Martin does that. In the prior paragraph, you explained that Martin does that through point of view. The only way you can answer that question, and again, I believe my opponent agreed, that the explanation earlier also made the same typographical error. I would point out this is kind of a common error. It happens frequently, and it's actually in claim one of the 2 through 3 patent does the same thing. It uses field of view and point of view interchangeably. If the Court has no further questions. No, thank you, Ms. McComas. Mr. Liddell, I will give you three minutes. Thank you, Governor. I think, and I appreciate that that's more extra time, so I will try to be concise. Thank you. I appreciate it. I think two things. First, I do think that this suggestion that the Board's findings and how the Board articulated its articulation of the problem to which Martin was allegedly directed can't just be ignored, that we can't just set that aside and say, well, we can just throw out what the Board said and decide they meant something different. That doesn't work, and I did not really hear a meaningful dispute that the Board's formulation was indeed not what Apple had argued and articulated. I want to go back to this question about the sort of, is this something that needs to be in the petition? And I think that when we talk about what needs to be in the petition and what's fair game for changing in the reply, I do think that the Intelligent Biosystems case is a pretty good guide here, because there, we all know that showing motivation to combine is something you have to put in your petition. But Intelligent Biosystems tells us that if you say you'd combine for reason A in your petition, you can't come back and reply and say, oh, actually, you'd combine for reason B. Even though you said you'd combine these two references and a person skilled in the art would be motivated to do it, you have to actually articulate the rationale, the reason, in the petition, and you can't change that in reply and expect that to be accepted. I think here what we're talking about is the exact same thing, to use the question that Judge Stark posed. If you articulate that the references are in the same field of endeavor in your petition, you can't then come back later and say, okay, we changed our mind. Now we're going to say they're directed to the same common problem. That's the same kind of change that Intelligent Biosystems suggested is not appropriate. And I would argue that the guidelines from the Patent Office, the governing regulations, make that pretty clear. So in the discussion of the rules behind what can be in a reply, the original guidelines say that a petition must identify how the construed claim is unpatentable over the relevant evidence. The reply cannot raise a new issue or belatedly present evidence. Examples of indications that a new issue has been raised in a reply include new evidence necessary to make out a prima facie case for the patentability or unpatentability of a claim. That's what's going on here. They put in a new issue that the rules say that's not permissible, and I don't think that we should understand Sanofi Aventis to have changed that rule or to create a new system. You're out of time. Okay. Thank you. Okay. Case will be submitted.